**LIUFAU MOELATA of Aua, acting for himself and as matai of his Liufau Family, Plaintiff**

**v.**

**UNUTOA TUATOO SONOMA of Aua, Defendant**

No. 53-1961

High Court of American Samoa

Civil Jurisdiction, Trial Division

November 17, 1961

Lolo, Counsel for Liufau Moelata.
Aumoeualogo, Counsel for Unutoa.

### OPINION OF THE COURT

MORROW, *Chief Judge.*

The plaintiff acting for himself and his branch of the Liufau Family of Aua filed his petition seeking a manda-

tory injunction requiring the defendant to remove a fale (guest house) built by himself and the Tausolia branch of the Liufau Family from certain land in the Village of Aua. Plaintiff claims that the guest house is located on communal family land of the Liufau title, that it was put up without his permission, and that, therefore, it should be removed. The Court viewed the land involved in the presence of the parties on the day preceding the hearing.

The Liufau title attached to the Village of Aua is split, Liufau Tausolia being the matai of one branch of the family (hereinafter referred to as the Tausolia branch) while plaintiff Liufau Moelata is the matai of the other branch (hereinafter referred to as the Moelata branch).

The plaintiff claims that the guest house is built on communal family land of the Liufau title called Moelata, while the defendant claims that it is built on the land Vaitulitai which was decreed to be the communal property of Liufau Mativa in *Tufaga, Sao and Maulupe v. Liufau Mativa*, No. 14-1903 (H.C. of Am. S.). Liufau Mativa was the bloodfather of and the predecessor in title of Liufau Tausolia, the present holder of the title of the Tausolia branch of the Liufau Family. Defendant Unutoa claims there is no such land as Moelata.

If the land on which the guest house is built is Vaitulitai, it is obvious that the plaintiff's petition must be dismissed since, in view of the decision in No. 14-1903, supra, the Moelata branch of the family has no interest in Vaitulitai.

The decree in No. 14-1903 did not describe Vaitulitai by metes and bounds, and it is impossible to determine its exact location from the decree. The plaintiff testified that Vaitulitai lies to the west of the land on which the guest house is built, the boundary line running between that land and the land (admittedly Vaitulitai) on which Unutoa has his palagi house and in which he lives. On the other hand, Unutoa (he is a grandson of Liufau Mativa and a blood

member of the Liufau Family) testified that there is no such land as Moelata and that Vaitulitai extends a considerable distance eastward from the guest house to a stream, so that there is included in Vaitulitai not only the land on which the guest house stands but also the burying ground of the Tausolia branch as well as five houses belonging to members of the Moelata branch. Of these five houses, two (one a palagi house and one a Samoan house) are owned and occupied by plaintiff Liufau Moelata himself. The decree in No. 14-1903 did not make mention of any land Moelata. If there is no such land or if there is and it is the communal land of the Liufau title (and not the communal land of the Tausolia branch alone), of course the decree would be silent as to Moelata, since it purported to cover only lands of the Tausolia branch alone and not lands owned in common by the two branches.

In our view of this case, it is not necessary for us to make a decision as to whether the guest house is on Vaitulitai or on Moelata, assuming there is such a land and that it is communal family land of the Liufau title.

As we have indicated, if the guest house is on Vaitulitai, the Moelata branch having no interest in such land, it follows that the petition must be dismissed. (This guest house is not only the guest house of Unutoa, a Liufau Family member, but it is also the guest house of the Tausolia branch.)

On the other hand, assuming there is a communal land Moelata, that the guest house is standing on it, that it is the communal land of the Liufau title, and that it was erected without the approval of Liufau Moelata, the petition must, in view of the undisputed evidence, likewise be dismissed.

The evidence showed very clearly that the Moelata branch has five houses on Moelata, assuming there is such a land, and that the places where the houses stand have been in the possession of the Moelata branch for a long

time. When the Court visited the land in dispute on the day preceding the hearing, the judges could see that the five houses, or most of them, had been up for a number of years. And the evidence with equal clarity showed that the place where the guest house stands has been in the possession of the Tausolia branch for many years. The Tausolia branch has two other houses on the disputed land. Unutoa is a member of the Liufau Family, the grandson of Liufau Mativa. He, while in Sonoma, lived for a number of years in a fale located where the guest house stands; and there were two other houses, not now standing, in which Unutoa also once lived, which stood in part on the spot where the guest house is. Unutoa is 56 years old. He lived on the tract in dispute for many, many years, having lived in the Tausolia branch in Aua for about 50 years.

Counsel Lolo for the plaintiff told the Court that there was a land Moelata and that it was owned by the two branches of the Liufau Family as tenants in common. With that we agree, assuming there is (but without deciding that there is) a land Moelata and that the guest house is on it.

It is very clear from the evidence that since the Moelata branch has had possession for some years of the parts of the disputed tract where their five houses are and since the Tausolia branch has likewise had possession of the part where the guest house is for a long time, many years in fact, we can reach no other conclusion than that it was agreed by both branches that the parts of Moelata, assuming there is such a land, in the possession of each branch, should be in its possession. In other words, that there has been either an implied agreement or an express agreement between the branches that each branch should have possession of the parts of Moelata of which it has had actual possession; that there has been a division at least of the possession of parts of Moelata. From the evidence, we be-

lieve that the right of possession by the Tausolia branch of the part of the land in dispute where their guest house is has not been denied by the Moelata branch prior to the time Unutoa and the Tausolia branch put up the guest house in October of this year.

It appears that they started to put a guest house with the prior approval of Liufau Moelata at the historical spot where the Liufau guest house is supposed to be, and that when the center posts were up a member of the Moelata branch appeared with a shotgun in a threatening manner. The Court asked Liufau Moelata if he knew this. After beating around the bush in making a couple of answers, he denied that he knew that a member of his branch had made threats with a shotgun. After the shotgun incident, the defendant and the Tausolia branch took down the center posts and proceeded to put up the guest house where it now is. While it was going up, Liufau Moelata filed his petition.

As before stated, we agree with Counsel Lolo for the plaintiff that (assuming there is a land Moelata) the two branches are tenants-in-common of the land.

The editors of Corpus Juris Secundum say this:

"A tenant in common has an interest in the possession of every part of the common property and has the right to occupy the whole of the property and every part thereof, but he is not entitled to exclusive possession of the whole or of any particular part, as against the other co-tenants, *except by agreement with them* (emphasis ours)." 86 C.J.S. 383.

Since the plaintiff's branch has five houses on the land in dispute (assuming it is Moelata) and the possession of the parts of the land where such five houses are and since the Tausolia branch has had possession for many years of the part of the land where the guest house stands, it is apparent, as before indicated, that there has been an agreement either express or implied for a division between the two branches of the possession of those parts of the

disputed lands where the five houses are and the one guest house is, as well as the places where the two other Tausolia branch houses stand.

■ Accordingly, then, it would follow that tenant-in-common Moelata branch has no right to exclude tenant-in-common Tausolia branch from possession of the place where the guest house is. It would seem to any reasonable human being that if tenant-in-common Moelata branch has the right to have possession of the places where their five houses stand, then the tenant-in-common Tausolia branch has the right to possession of the land where the one guest house and the other two Tausolia branch houses are. We think that the law as stated in the quotation from Corpus Juris Secundum, supra, supports this view. And ordinary common sense also supports it. If one tenant-in-common has the right to have five houses on the tract in dispute, the other tenant-in-common certainly has the right to have three houses on it.

It follows, therefore, since the Tausolia branch has the right to the possession of the place where the guest house stands, assuming but not agreeing that there is such a land Moelata, and that the two branches are its owners as tenants-in-common, that the plaintiff's petition must be dismissed.

We are not deciding on what land the other two Tausolia houses stand. Unutoa claims that they as well as the guest house are on Vaitulitai.

Plaintiff Liufau Moelata claims to have a fear that if the Unutoa occupies this guest house for 20 years, the next Unutoa may claim to own the land where the guest house is through adverse possession. We think that such a fear is groundless since the title Unutoa has no land. Unutoa frankly told the Court that the Unutoa title has no land, and this Court knows that to be a fact from evidence (referred to in this case) in the Unutoa title case, No. 28-

235

1961, an interrelated proceeding. There are six families in Aua connected to the Unutoa title, of which the Liufau Family is one. The custom is that when a new Unutoa is selected, he builds his guest house on land of the one of the six families of which he is a member. This is because the Unutoa title has no land of its own.

In order to acquire land by adverse possession, such possession must have been hostile, i.e. under a claim of ownership in the adverse possessor. The editors of Corpus Juris Secundum say:

"Possession must be hostile at the inception of the limitation period to ripen into adversary title." 2 C.J.S. 639.

Hostile possession "as applied to an occupant of real estate holding adversely, is not construed as implying actual enmity or ill will, but merely means that he *claims to hold the possession in the character of an owner* (emphasis ours) and therefore denies all validity to claims by any and all other persons. *Ballard v. Hansen,* 33 Neb. 861, 51 NW 295; *Mittet v. Hansen,* 178 Washington 541, 35 P.2d 93, 95." Black's Law Dictionary (4th ed.) p. 1326.

In view of the fact that the Unutoa title has no land and the custom for the Unutoa to build his guest house on land admittedly not his, it would seem to follow that this fear of Liufau Moelata is without any foundation. The Unutoa could not honestly claim that the land of one of the six families on which he has his guest house is the property of the Unutoa title when he knows very well that the Unutoa title has no land.

This petition should be dismissed.

### ORDER

Accordingly, it is ORDERED that the plaintiff's petition be and the same is hereby dismissed.

Costs in the sum of $17.00 are hereby assessed against Liufau Moelata, the same to be paid within 30 days.